SO ORDERED.

Dated: July 28, 2017

_Eddward P. Ballinger Jr., Bankruptcy Judge_

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

MINUTE ENTRY/ORDER

FOR MATTER TAKEN UNDER ADVISEMENT

| | |
|---|---|
| Bankruptcy Judge: | Eddward P. Ballinger, Jr. |
| Case Name: | Capitol Litho Printing Corporation - Chapter 11 |
| Case Number: | 2:14-bk-13840-EPB<br>2:14-bk-17480-EPB<br>(Jointly administered under Case Number 2:14-bk-13840-EPB) |
| Subject of Matter: | Application for Attorney's Fees and Costs |
| Date Matter Taken Under Advisement: | April 25, 2017 |
| Date Matter Ruled Upon: | July 28, 2017 |

On December 27, 2015, this Court approved Debtors' request to employ BGC Real Estate of Arizona, LLC, dba Newmark Grubb Knight Frank, and its agents, Geoffrey M. Waldrom and Dan Dobric (jointly referred to hereinafter as "BGC"), to market and sell certain real estate of Debtors. Debtors sought BGC's employment pursuant to 11 U.S.C. § 327 and agreed to pay BGC a fixed commission based on a percentage of the selling price as provided in the listing agreement executed between the parties. The Court retained the right to adjust the commission pursuant to Local Bankruptcy Rule 2014-1 and 11 U.S.C. § 328(a). In addition,

1

BGC was required to file an application for expense reimbursement pursuant to 11 U.S.C. § 330(a)(1)(B). Notably, the listing agreement also contained a prevailing party provision: "In the event a claim or controversy arises between the parties, the prevailing party shall be entitled to its costs and reasonable attorneys' fees in any legal action." Exhibit A, Docket 179.

After the sale of the property, Debtors objected to BGC's commission. The Court overruled Debtors' objection and concluded that BGC was entitled to a 4% sales commission and permitted BGC to file an application for attorney's fees and costs pursuant to the listing agreement and Arizona Revised Statute ("A.R.S.") § 12-341.01. BGC filed its application seeking fees under the listing agreement's prevailing party provision, A.R.S. § 12-341.01, and 11 U.S.C. § 330(a)(3). Debtors objected on a variety of grounds that the Court rejected during the hearing held on April 11, 2017. However, at that hearing, the United States Trustee questioned whether the fees were prohibited by the United States Supreme Court's decision in *Baker Botts L.L.P. v. Asarco LLC*, 135 S.Ct. 2158 (2015) and its progeny. The Court granted the parties the opportunity to brief the issue.

The Court has reviewed the parties' briefs and additional relevant case law.

I. *Baker Botts L.L.P. v. Asarco LLC*

The issue in *Baker Botts* was whether 11 U.S.C. § 330(a)(1) permits a bankruptcy court to award a professional employed under 11 U.S.C. § 327(a) legal fees incurred in defending its fee application ("defense fees"). 135 S.Ct. at 2162-63. The debtor in *Baker Botts* hired two law firms to represent it in its Chapter 11 bankruptcy proceeding. Both firms sought compensation under § 330(a)(1)(A), which allows for "reasonable compensation for actual, necessary services rendered by . . . a professional person, or attorney." The bankruptcy court awarded the law firms

approximately $120 million for the work performed and an additional $5 million for fees incurred defending their fee applications. Debtor appealed, *inter alia*, the defense fee award.

The Supreme Court's opinion begins by recognizing the well-settled American Rule that each litigant pays its own attorneys' fees unless a statute or contract explicitly provides otherwise. The question presented was whether 11 U.S.C. § 330(a)(1)(A) is an explicit statutory exception to this rule. The Court held that it was not because professionals employed pursuant to § 327 are employed to "serve the administrator of the estate for the benefit of the estate." *Id.* at 2164. In turn, § 330(a)(1)(A) provides that a "court may award . . . a professional employed under section 327 . . . reasonable compensation for actual, necessary services rendered by" the professional. The Court concluded that attorneys' fees incurred defending a fee application are not incurred for the benefit of the estate or in service of the estate. They are incurred only for the benefit of the professional. *Id.* at 2165.

While in this case BGC initially sought its defense fees pursuant to § 330(a)(3), as opposed to § 330(a)(1), the *Baker Botts* analysis equally applies to a request under that subsection. Subsection (a)(3) defines what constitutes reasonable compensation for purposes of subsection (a)(1) and similarly relies on the fees being necessary and for the benefit of the administration of the estate.

II.     *In re Boomerang Tube, Inc.*

Alternatively, BGC argues that *Baker Botts* expressly recognizes that a contractual exception to the American Rule may also exist. Thus, under the prevailing party provision in the listing agreement, BGC believes it is entitled to its defense fees. Debtors argue that *In re Boomerang Tube, Inc.*, 548 B.R. 69 (Bankr. D. Del. 2016), rejects contracting around *Baker Botts*. Debtors are somewhat correct. The UST in *Boomerang* made the very argument Debtors

3

Case 2:14-bk-13840-EPB    Doc 417    Filed 07/28/17    Entered 07/28/17 16:07:26    Desc
Main Document    Page 3 of 10

make here – that *Baker Botts per se* barred fee defense provisions, but the court in fact recognized that contractual exceptions continue to exist post-*Baker Botts:* "[T]he Court agrees with the Committee's argument that the contract exception to the American Rule is not precluded by the ruling in *ASARCO [Baker Botts]*."[1] *Id.* at 73. The practical effect of *Boomerang*, however, suggests that contracting around *Baker Botts* will be difficult, if not impossible.

In *Boomerang*, the UST appointed an Official Committee of Unsecured Creditors, which in turn retained legal counsel. Committee counsel sought approval under § 328 of a provision in the retention agreements requiring the estate to indemnify counsel for expenses incurred in successfully defending their fees, subject to court approval under §§ 330 and 331. The court sustained the UST's objections to these provisions, concluding that the indemnification provisions were not generally recognized exceptions to the American Rule. *Id.* at 74-75. Unlike a true prevailing party provision, the subject indemnification provisions were unilateral, requiring only debtor's estate to reimburse the defense fees. Committee counsel owed no reciprocal obligation to the estate. Additionally, the agreements were between the Committee and counsel. The estate was not a party. Yet they purported to require payment from the bankruptcy estate regardless of who objected to counsel's fees.[2] The Court then addressed whether the fee defense provision was permissible under 11 U.S.C. § 328(a), which

---

[1] The Committee counsel in *Boomerang* also sought to recover its defense fees pursuant to 11 U.S.C. § 328(a). The *Boomerang* court concluded, relying on *Baker Botts*, that § 328(a), like § 330(a)(1), is not an explicit statute authorizing the award of defense fees to a professional. Rather, § 328 simply provides that a court may approve employment of a professional on "any reasonable terms and conditions." Further, and also in line with *Baker Botts*, the court concluded that such defense fees were not rendered in service to the Committee, but were only for counsel's benefit. *Id.* at 75.

[2] The court noted in a footnote, however, that even if the agreements required payment by one of the contracting parties, it still would not uphold the provisions because "[s]uch provisions are not statutory or contractual exceptions to the American Rule and are not reasonable terms of employment of professionals." *Id.* at 79, n.6.

4

requires the employment of a professional be on "reasonable terms and conditions" and concluded such a provision was not reasonable because it could benefit only the professional and not the estate.[3]

In a subsequent Delaware case, *In re Nortel Networks, Inc.*, 2017 WL 932947 (Bankr. D. Del.), the court permitted the recovery by the indenture trustees' attorneys of their defense fees against the debtor based on a provision in the bond indenture obligating debtor to pay the attorneys' defense fees. In rather conclusory fashion, the court held that, unlike the retention agreement in *Boomerang*, the indenture in *Nortel Networks* provided "for payment of the Indenture Trustees' and its attorneys' fees incurred in the fee dispute" because it required "Debtors . . . to indemnify the Indenture Trustee for 'costs and expenses of defending itself'" and entitled "the Indenture Trustee to exercise a charging lien against distributions to secure payment." *Id*. at *9. Accordingly, the court ruled that the indenture "is clearly outside the circumstances of *ASARCO* and *Boomerang*." *Id*.

Diverging post-*Baker Botts* cases do little to resolve the issue here. And there does not appear to be any citable Ninth Circuit precedent. It is noteworthy that the *Baker Botts* and *Boomerang* cases involved requests for defense fees incurred by professionals employed pursuant to § 327. In the case at hand, only BGC was employed in its role as a commercial real estate broker. In-house counsel for BGC was not employed. Our case is more similar to that in *In re Walker Land & Cattle, LLC*, 535 B.R. 348 (Bankr. D. Idaho 2015)(post-*Baker Botts*) and

---

[3] Several Delaware courts have relied on *Boomerang* to deny applications to employ that contained more traditional prevailing party and fee defense reimbursement provisions. *See* Joseph C. Barsalon II, Delaware Bankruptcy Court Denies "Fees on Fees" Provision in Retention Application, American Bar Association, Section of Litigation: Bankruptcy & Insolvency (June 1, 2016), http://www.americanbar.org (citing *In re New Gulf*, No. 15-12566 (BLS)(letter ruling to counsel); *In re Taylor-Wharton*, No. 15-12075 (BLS)(same); *In re Samson*, No. 15-11934 (CSS) (same)); *see also* Natasha Congonuga, Delaware Bankruptcy Court Finds Contractual Workarounds to *ASARCO* to be Unworkable, The Business Advisor (March 30, 2016), http://www.gibbonslaw.com; Carmen Germaine, Kirkland Can't Collect Fee Fight Costs in Samson Ch. 11, Law360 (Feb. 9, 2016), http://www.law360.com/articles/756842.

5

*Max Rouse & Sons, Inc. v. Specialty Plywood, Inc. (In re Specialty Plywood, Inc.),* 160 B.R. 627 (9th Cir. BAP 1993), *opinion withdrawn following settlement,* 166 B.R. 153 (9th Cir. BAP 1994).[4]

III.     *In re Walker Land & Cattle, LLC* and *In re Specialty Plywood, Inc.*

In both *Walker* and *Specialty Plywood*, the courts refused to award professionals their legal fees pursuant to § 330(a)(1) because the fees were not those of court-employed professionals. Rather, they were fees of the attorneys hired "by" the court-approved professionals. Consistent with *Baker Botts*, neither court found the fees reimbursable under § 330(a)(1)(B) as "actual, necessary expenses" of the court-approved professionals despite the fact that the retention and engagement letters between debtors and the professionals explicitly provided for recovery of such attorneys' fees under certain circumstances.

In *Walker,* the bankruptcy court approved debtor's application to employ an auditor to prepare financial statements. The employment application did not indicate that the auditor might retain counsel to advise her in connection with the audit, but the engagement letter between the auditor and debtor did. It specifically provided that if the auditor were required by court order or subpoena to produce documents or witnesses with respect to its engagement, debtor would be obligated to reimburse the auditor for her time and expenses, as well as any fees and expenses of legal counsel retained to respond to those requests. A creditor subsequently subpoenaed the auditor's records, and the auditor hired legal counsel. The auditor sought reimbursement of her attorneys' fees in her subsequent application and debtor objected.

As a preliminary matter, the court pointed out that the attorney itself would have no authority to seek its fees directly from debtor pursuant to § 330(a) because it was not employed

---

[4] While the 9th Circuit BAP subsequently withdrew its opinion in *Specialty Plywood* due to the parties' settlement, the analysis is instructive and prescient of the analysis to come later in *Baker Botts*.

as a professional pursuant to § 327(a).  535 B.R. at 351-52.  Courts require strict compliance with §§ 327 and 330 so that professionals "'cannot recover fees for services rendered to the [bankruptcy] estate unless those services have been previously authorized by a court order.'"  *Id.* at 351 (citing *In re Melton*, 353 B.R. 901, 903 (Bankr. D. Idaho 2006)(quoting *Atkins v. Wain, Samuel & Co. (In re Atkins*), 69 F.3d 970, 973 (9th Cir. 1995)).  While not expressly saying so, the court apparently distinguished the facts of its case from those presented in *Baker Botts*, which the *Walker* court cited only once for the holding that reasonable compensation will be paid to those professionals employed under § 327 as long as compensation requested was for actual, necessary services rendered or expenses incurred.  *Id*.

The auditor argued that her attorneys' fees were reimbursable under § 330(a)(1)(B) as expenses and pointed to the fact that the debtor agreed in the retention agreement to reimburse such expenses.  After surveying divided case law on the subject, the court, relying in part on *Specialty Plywood*, denied the auditor's attorneys' fees, concluding (as in *Baker Botts*) that the fees were not necessary to accomplish the task for which the auditor was hired.

> Without such a limitation, potentially, whenever a bankruptcy court-approved professional deems it necessary to employ another professional to protect its interests in the bankruptcy case, that cost would be taxed to the bankruptcy estate, effectively negating the Code's regimen requiring prior notice to other interested parties, and the necessary scrutiny by the court, before committing the limited resources of the bankruptcy estate to the payment of professional compensation.

*Id*. at 356-57.

Also pertinent to this case, the *Walker* court noted that the language in the retention agreement expressly permitting recovery of fees was not applicable because the order approving the auditor's employment was limited to only those amounts allowed under § 330.

> This result obtains despite the authority ostensibly granted to [the applicant] in the engagement letter to hire a lawyer, and to charge Debtor for the fees [she] thereby incurred. While the terms of the engagement letter are clear enough to cover the

7

> . . . fees, as noted above, the Court's order approving . . . employment limited her entitlement to payment of compensation and expenses to only those amounts allowed under § 330. Moreover, only the bankruptcy court, not the debtor in possession and professional, can determine, applying the standard embodied in § 330(a)(1)(B), as developed in the case law, what expenses were necessary.

*Id.* at 357. Similarly here, the order approving BGC's employment expressly provided only for BGC's percentage commission as set forth in the retention agreement and those expenses allowed under § 330(a)(1)(B). Docket 196.

In *Specialty Plywood*, debtor employed an auctioneer pursuant to § 327. The property sold for less than debtor anticipated, and debtor objected to the auctioneer's fees. The auctioneer hired counsel to defend its fee application and requested approval of those attorneys' fees as a reimbursable expense. The BAP denied the auctioneer's request on several grounds. First, it concluded that the contractual right to fees did not provide for fees in this particular circumstance because the contract required the fees to arise out of a breach or failure of a condition of the contract. According to the court, the auctioneer incurred its fees in filing its fee application and not in an action to enforce the agreement. "The litigated issues in the fee application process were federal bankruptcy law issues, the litigation of which does not give rise to any rights to recover fees under a contractual fee provision such as the one at issue in this appeal." 160 B.R. at 632. Second, it concluded that § 330(a) did not provide a statutory basis because the fees requested were not those of an approved professional. *Id.* Third, even if counsel were an approved professional, the fees were not "actual, necessary expenses" pursuant to § 330(a)(1)(B) because they were not incurred "to accomplish the task for which the professional was employed." *Id*. The auctioneer had already completed the auction and only hired counsel afterward to defend its application for payment.

8

Based on the foregoing, the Court concludes that BGC is not entitled to an award of its attorneys' fees incurred defending its commission. Bankruptcy is highly regulated, and Congress has placed significant limits and controls on the employment and payment of professionals to prevent dissipation of limited estate assets. To this end, courts require strict compliance with these rules and Code provisions. To allow professionals to contract around the requirements of sections 327, 328 and 330 in this situation would eviscerate the requirement that professionals be paid for the actual, necessary services they provided and expenses they incurred on behalf of the estate. Although this case involves in-house counsel for BGC, that does not mean counsel was employed as a professional pursuant to § 327.

Additionally, the defense fees were not actual or necessary to the work for which BGC was specifically employed. The defense fees in no way benefitted the estate. The prevailing party provision in the listing agreement is very broad and does not suggest that defense fees could or would be sought in this case and the purported right to receive these fees was not considered by this Court. The order approving BGC's employment made no mention of the prevailing party provision. The parties referred solely to BGC's right to receive its commission as set forth in the listing agreement and that any reimbursement of expenses would be made pursuant to §330(a)(1)(B). While *Baker Botts* recognizes that contractual fee provisions may provide an exception to the American Rule for purposes of sections 327, 328 and 330, it is difficult to see a situation in which such a prevailing party provision could be upheld at least with respect to attorneys' fees incurred defending a professional's compensation. At minimum, such a provision would need to be brought to the Court's attention during consideration of the professional's application to employ.

Finally, BGC argues that application of *Baker Botts* merely reduces its fees because a good portion of the fees was incurred in preparing its request for fees, as opposed to defending its commission. The Court disagrees. A review of the billing statements attached to the fee application all relate to the dispute over BGC's commission. An award of fees against the estate for preparing that fee application constitutes overreaching.

For these reasons,

IT IS HEREBY ORDERED denying BGC's Application for Attorney's Fees and Costs. Counsel for BGC shall lodge a form of order consistent with this decision.